## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| BARBARA A. MCINTYRE, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Docket No.: 1:14-CV-83-JCN |
| v. ) | |
| ) | |
| AFFILIATED LABORATORY, INC., ) | |
| et al. ) | |
| ) | |
| Defendants ) | |

### PLAINTIFF'S TRIAL BRIEF

Factual Background

Barbara McIntyre was employed by Defendant Affiliated Laboratory, Inc. as a phlebotomist from 2003 until her termination on August 21, 2012. She worked as an outpatient phlebotomist until February of 2012, when she transferred to inpatient phlebotomy.

Throughout her employment, Ms. McIntyre suffered from debilitating migraine headaches. These headaches caused her to periodically request leave pursuant to the Family Medical Leave Act (FMLA) during her employment. Ms. McIntyre utilized her FMLA leave frequently, to the point where she ran out of her annual FMLA allotment at least once per year from 2007 through 2012. When necessary, Ms. McIntyre would request, and receive, additional leave time beyond the protections afforded by the FMLA. Ms. McIntyre's supervisors, Mary Lou Buchanan and Myrle Stevens, would later describe Ms. McIntyre's absences from work as "inconvenient" and "frustrating." Nonetheless, Defendant reasonably accommodated Ms. McIntyre several times throughout her employment, but those accommodations came to an abrupt halt on August 21, 2012.

In addition to her migraine headaches, Ms. McIntyre suffered from a recurrent incisional hernia during the last couple years of her employment. The hernia arose as a result of a laparotomy for an infected hematoma after gastric bypass surgery in March of 2010. The hernia caused Ms. McIntyre so much difficulty that she underwent surgery to repair the hernia in December of 2011. Ms. McIntyre was released to return to work a few weeks after this surgery, with a restriction on drawing blood from children until she had healed further from surgery because children might kick and cause reinjury to the incision.

Unfortunately, Ms. McIntyre's hernia returned in the February of 2012 and Ms. McIntyre again sought medical treatment for the hernia in April of that year. When Ms. McIntyre was hospitalized for pancreatitis on July 8, 2012, it was decided that she should have hernia surgery once she had sufficiently recovered. She was approved for a medical leave of absence from work and she kept her workplace informed about her status. Hernia surgery was performed on July 30, 2012.[1] At the time, it was estimated that Ms. McIntyre would be able to return to work in three weeks.

On August 21, 2012, Ms. McIntyre met with her physician, Dr. Michelle Toder, who cleared her to return to work full-time on August 27, with the only restriction being that she be placed on "triage/desk duties – not on the floors for 4 additional weeks." As part of Ms. McIntyre's regular duties, she was usually stationed at the triage desk one day per week and it was essential that the triage desk workstation be staffed by someone every day.

That same day, Ms. McIntyre provided Dr. Toder's restriction form to her workplace. Later that afternoon, Ms. McIntyre received a phone call from Ms. Buchanan and Ms. Stevens. During that phone call, Ms. McIntyre was told that the phlebotomy department was understaffed,

---

[1] This recurrent incisional hernia returned once again in March of 2013 after her termination. Ms. McIntyre had a third hernia surgery in October of 2013 which appears to have finally resolved the problem.

that Defendant could not accommodate her because of her restrictions, and that her employment was being terminated.  Ms. Stevens and Ms. Buchanan told Ms. McIntyre that she would not be able to sit at the triage desk because the phlebotomist covering the desk may have to respond to emergent situations that would be beyond Ms. McIntyre's restrictions.

Ms. McIntyre was shocked to hear that her employment was being terminated.  It was a rare event that someone covering the triage desk would have to respond to an emergent situation, as another phlebotomist would carry a beeper to respond to doctor STAT calls and the phlebotomist at the triage desk would only be used as a last resort.  Ms. McIntyre stated that Dr. Toder had let her draw outpatients when she returned from her first hernia surgery.  Ms. McIntyre asked Ms. Buchanan and Ms. Stevens if she could temporarily return to the outpatient drawing station and offered to get further clarifications from Dr. Toder as to what she would be able to do over this four week period.  However, Ms. Buchanan and Ms. Stevens said that she could not and told Ms. McIntyre that the decision to terminate her employment had already been made.  Dr. Toder would later confirm in her deposition that Ms. McIntyre would have been able to draw blood from adult outpatients during this four week period.

Ms. Buchanan and Ms. Stevens would later admit at their depositions that neither of them had a clear understanding as to what the term "on the floors" meant in Dr. Toder's note.  Neither Ms. Buchanan nor Ms. Stevens attempted to contact Dr. Toder or any other medical providers for Ms. McIntyre prior to terminating her employment.  Neither of them asked Ms. McIntyre to sign any releases so they could speak to her physicians.  Ms. Stevens admitted at her deposition that Affiliated Laboratory could have given Ms. McIntyre another four week leave of absence, but that it chose not to do so.

Ms. McIntyre has filed a complaint alleging failure to accommodate/disability discrimination and FMLA retaliation under both federal and state law. Summary judgment has been denied and both counts will now go forward to a jury trial.

Damages

Ms. McIntyre is seeking compensatory and punitive damages up to the applicable statutory cap. Of course, this cap would be exclusive of back pay, front pay, interest, costs, and reasonable attorneys' fees. As of today, the attorneys' fees and costs total approximately $69,000.00. Since her termination, Ms. McIntyre has been unable to find employment and her wage loss continues to accrue. At the time of her termination, Ms. McIntyre was making approximately $31,842.72 per year. From the date of her termination through July of 2013, a period of approximately 11 months, she sought full-time work and her wage loss totaled roughly $29,000.00. From July of 2013 through the present date, she has been seeking part-time work. Calculated through the end of this year using a rate that is half of her former wage, roughly $39,000.00 would be added to her wage loss, such that her wage loss would total approximately $68,000.00. Ms. McIntyre also lost benefits from her employment with Defendant, such as health insurance, dental insurance, 401(k) retirement benefits, and life insurance. As a result, she has had to pay a number of healthcare bills out of her own pocket.

Evidentiary Issues

Plaintiff's evidentiary issues are addressed in her Motion in Limine that has been filed with the Court. Plaintiff seeks to exclude 1) Plaintiff's social security records, and the testimonial evidence that Plaintiff applied for and received Social security disability benefits; and 2) Plaintiff's unemployment records, and the testimony concerning Plaintiff's application for, and receipt of, unemployment benefits.

Potential Legal Issues

      Plaintiff does not anticipate raising any novel legal issues in this litigation.

Dated:  December 11, 2015    /s/ Erik M. P. Black
                                                       Erik M. P. Black, Esq.; BRN 4733
                                                       Arthur J. Greif, Esq.; BRN 2551
                                                       Julie D. Farr, Esq.; BRN 8161
                                                       Gilbert & Greif, P.A.
                                                       82 Columbia Street
                                                       P.O. Box 2339
                                                       Bangor, Maine 04402-2339
                                                       Attorneys for Plaintiff

CERTIFICATE OF SERVICE

      I, Erik M. P. Black, Esq., attorney for Plaintiff, hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all registered participants.

Dated:  December 11, 2015    /s/ Erik M. P. Black
                                                       Erik M. P. Black, Esq.
                                                       Attorney for Plaintiff